**James Leroy GREEN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-77-368.**

Court of Criminal Appeals of Oklahoma.

June 18, 1979.

As Corrected June 19, 1979.

David W. Lee, Asst. Public Defender, Robert A. Ravitz, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Evan Douthit, Legal Intern, for appellee.

## OPINION

PER CURIAM:

Appellant, James Leroy Green, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–76–2793, for the offense of Rape in the First Degree, in violation of 21 O.S.1971, § 1111. His punishment was fixed at six years' imprisonment. From said judgment and sentence an appeal has been perfected to this Court.

Inasmuch as this case must be reversed, we do not deem it necessary to recite a detailed statement of the evidence. The prosecutrix, a professional vocalist, testified that she was performing at an Oklahoma City hotel on the night of July 23, 1976. After finishing her final show, she had a conversation with the defendant. Defendant identified himself as an attorney and asked her to have breakfast with him. She agreed and they went to a restaurant in defendant's white Corvette. They ate and started driving back toward her hotel at approximately 3:15 a. m. Defendant pulled off Interstate 40, and stated that he had a flat tire. He then grabbed her and forced her to lie back over the console. He pulled her clothes off and accomplished forcible intercourse. He returned her to the hotel where the police were called and she was taken to University Hospital.

Defendant testified that he was employed as the District Sales Manager for a textile company. He testified that he met the prosecutrix in the club of the hotel on the evening in question. The defendant took her to breakfast and returned her to the hotel. He denied stopping along the highway and denied having intercourse with her. He testified that Detective Harrison, the arresting officer, was a neighbor of his and that their children played together.

Defendant asserts four assignments of error, only one of which we deem necessary to discuss, that being that the trial court committed error by allowing Detective Harrison to testify concerning previous charges filed against defendant. We agree. The record reflects that Detective Harrison was called in rebuttal wherein the following transpired:

"Q. Okay. I ask you secondly, officer on direct because I instructed you as to previous acquaintance with the Defendant. I'll ask you now this question: Did you have occasion to know or be familiar with the Defendant at any time prior to the related incident?"

" * * *

"What is that personal knowledge of the Defendant?

"A. I filed a State charge on him for rape and oral sodomy.

"Q. When was that?

"A. This was approximately two to three years ago." [Tr. 264–266].

The record further reflects that the trial court had previously instructed the prosecuting attorney to not allow the officer to testify as to any prior relationship. The trial court subsequently ruled that the defendant had "opened the door" by testifying that he had known Detective Harrison for a year or so, and that they lived in the same neighborhood and their children played together. We are of the opinion that defendant's testimony as to his relationship with the officer was really collateral and does not serve as justification for the highly inflammatory and prejudicial evidence that the defendant had previously been charged with rape and sodomy. See *Galindo v. State*, Okl.Cr., 573 P.2d 1217 (1978) and *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977).

The prejudicial effect of the officer's testimony was even more aggravated when on cross-examination the following occurred:

"Q. Officer Harrison, do you know the disposition of that case?

"A. Yes, sir.

"Q. What was it?

"A. It was dismissed on a technicality.

"Q. It was dismissed, was it not, by the Court?

"A. That's right, on a technicality.

"Q. You don't know whether it was a technicality or not, do you?

"A. I was advised that it was.

"Q. You do not know of your own personal knowledge, do you?

"A. Well, I wasn't in the courtroom." [Tr. 266].

Considering the conflicting evidence, as to the defendant's guilt, we can arrive at no other conclusion except that the inference that the defendant had committed other sexual offenses but was set free by legal technicalities would have caused a devastating effect on the minds of the jurors.

The judgment and sentence is accordingly REVERSED and REMANDED.